405 P.2d 293

Ernest J. LINSENMEYER, Appellant,

v.

Glenford M. FLOOD and G. M. Flood Plumbing & Heating Co., Inc., an Arizona corporation, Appellees.*

1 CA–CIV 24.

Court of Appeals of Arizona.

Aug. 31, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7576. The matter was referred

Donald D. Holroyd, Phoenix, for appellant.

Stephen W. Connors, Phoenix, for appellees.

CAMERON, Judge.

This is a suit by Ernest J. Linsenmeyer, plaintiff, against Glenford M. Flood and G. M. Flood Plumbing and Heating Company, Inc., an Arizona corporation, defendants, for the amount of $3,500 loaned

to this Court pursuant to Section 12–120.23 A.R.S.

to the defendants. The defendants answered and plead a discharge in bankruptcy. The lower court held for the defendants and the plaintiff brings this appeal.

■ Although the facts are strongly disputed, the evidence taken in the strongest light in favor of the court's decision, Bohmfalk v. Vaughan, 89 Ariz. 33, 357 P.2d 617 (1960), Deuel v. McCollum, 1 Ariz.App. 188, 400 P.2d 859 (1965), are as follows:

The defendant Glenford M. Flood was president of the G. M. Flood Plumbing and Heating Company, Inc., which was engaged primarily in the business of contracting. In the fall of 1955, defendant Glenford M. Flood, found that some $2,000 in payroll checks were beginning to "bounce". He contacted his brother, to see if a loan could be arranged. Defendant's brother contacted Otto Linsenmeyer and a conversation took place between defendant's brother, Glenford M. Flood and Otto Linsenmeyer, concerning a loan for approximately $3,500. The defendant, Glenford M. Flood, had two station wagons at the time, and it was suggested that he might take these automobiles to Otto Linsenmeyer's brother, Ernest Linsenmeyer, to see if he wished to purchase the automobiles from Glenford M. Flood. This was done, but no transaction was consummated.

Glenford M. Flood, his brother and Otto Linsenmeyer met a second time and it was agreed that a loan of $3,500 would be made. Three checks were drawn on the attorney's trust account as follows: one to Glen Flood Plumbing and Heating Company, Inc., for $93.48, one to the U. S. Director of Internal Revenue and G. M. Flood Plumbing and Heating Company, Inc., in the amount of $1,506.52, and one to Otto Linsenmeyer for $1,900. A fourth check, not signed, on the Otto Linsenmeyer business account was endorsed by G. M. Flood. The testimony indicates that this fourth check Glenford M. Flood endorsed was a receipt for the amount of $1,900 in cash which was drawn out of the trust account by Otto Linsenmeyer and paid to Glenford M. Flood. It was the testimony of Otto Linsenmeyer and his brother that this money was being loaned to Glenford M. Flood and the G. M. Flood Plumbing and Heating Company, Inc., by Ernest Linsenmeyer and not by Otto Linsenmeyer. Glenford M. Flood denied this.

Glenford M. Flood and the G. M. Flood Plumbing and Heating Company, Inc., subsequently filed a petition for bankruptcy in the Federal District Court of the State of Arizona. A certified copy of the discharge and list of creditors admitted in evidence, shows that in both bankruptcies, the defendant listed as an unliquidated, unsecured claim, the claim of Otto Linsenmeyer, 219 West Adams, Phoenix, Arizona, incurred October, 1955, in the amount of $10,000. A note in the amount of $10,000.00 payable to Otto Linsenmeyer had been signed by Glenford M. Flood as individual and as president of the G. M. Flood Plumbing and Heating Company, Inc., as security for the loan. The amount of $10,000, while admitted by all parties as not being the amount of the loan, was evidently in that amount to support some assignments of contracts by the defendants to secure the $3,500.00 loan.

Otto Linsenmeyer admittedly had knowledge of the filing of this bankruptcy and admittedly received notice of the first meeting of creditors. Otto Linsenmeyer did not notify his brother of the bankruptcy and after the bankruptcy was closed, Ernest Linsenmeyer brought suit for the amount due and owing of $3,500. It was the contention of Ernest Linsenmeyer that the money used by Otto Linsenmeyer in the loan to Glenford M. Flood and the G. M. Flood Plumbing and Heating Company, Inc., were the trust funds of Ernest Linsenmeyer and that he, Ernest Linsenmeyer, made the loan and not Otto Linsenmeyer. Ernest Linsenmeyer admitted that his brother, Otto Linsenmeyer, had the authority to make the loan for and on behalf of Ernest Linsenmeyer, and that the funds in question were kept by Otto Linsenmeyer in his trust account. On cross examination,

Otto Linsenmeyer gave the following testimony:

"Question: And did you take any type of action in this bankruptcy petition?

Answer: Absolutely not, because he didn't owe me a dime.

Question: You did not file any creditor's claim?

Answer: Absolutely not. It would be a false claim because he doesn't owe a dime personally.

Question: Did you file a claim on behalf of your brother?

Answer: No, because he was not listed as a creditor in the bankruptcy to my knowledge."

The testimony is sufficient from which the court might well find that the defendant, Glenford M. Flood, had every reason to believe that this loan was made to him by Otto Linsenmeyer rather than the plaintiff, Ernest Linsenmeyer. In his testimony, Glenford M. Flood, very clearly indicated that he did not know that Ernest Linsenmeyer was making the loan but to the contrary believed the loan was being made by Otto Linsenmeyer. The fact that the checks came from Otto Linsenmeyer and that the note was made payable to Otto Linsenmeyer might well lead most people to believe that was the case. In filing his petition in bankruptcy, he listed the amount of the note and Otto Linsenmeyer rather than Ernest Linsenmeyer.

■ The law is fairly clear that a bankrupt is discharged from provable debts if they are properly scheduled or in the alternative if the creditor had notice or actual knowledge of the bankruptcy proceedings. See Collier on Bankruptcy, 14th Edition, Vol. 1, Section 17, page 1655. The central question in this case is what effect, if any, did the notice of the bankruptcy by the defendants to Otto Linsenmeyer, have upon the plaintiff, Ernest Linsenmeyer.

An analogous case is Katz v. Kowalsky, 296 Mich. 164, 295 N.W. 600, 134 A.L.R. 179 (1941). In that case, notice was given to the brother of Lena Katz. The brother was an attorney and was asked why he did not tell his sister about the bankruptcy proceedings. He answered:

"Because as a lawyer I knew if she obtained knowledge of the existing bankruptcy proceedings, that she would be bound to participate in them, too, and I felt if she had no knowledge of it, her claim against Kowalsky under that award would not be extinguished by this discharge in bankruptcy." 295 N.W. 600 at 602.

The Michigan Court in holding that notice of the bankruptcy proceedings or actual knowledge thereof by an attorney authorized under the facts to receive notice, was the equivalent of notice to the creditor quoted with approval:

"The attorney is conclusively presumed to have informed his client of all material facts which the attorney acquires knowledge of, and which effect the client's rights, *while the attorney is acting in the course of his employment and within the scope of his authority.* * * *" In Re Locust Bldg. Co., 2 Cir., 299 F. 756 at 769 (1924). (Emphasis ours)

■ That Otto Linsenmeyer had authority to act for and on behalf of his brother in the manner in which this loan was made, there can be no doubt. Otto Linsenmeyer had the authority to take Ernest Linsenmeyer's money from the trust account, pay it over to the defendants and receive in return a note payable not to Ernest Linsenmeyer but to Otto Linsenmeyer. Otto Linsenmeyer's authority was co-existent with his trust. Having the authority to loan the money on behalf of Ernest Linsenmeyer in the name of Otto Linsenmeyer, he, Otto Linsenmeyer, had authority to receive notice of the bankruptcy proceeding for and on behalf of his brother Ernest Linsenmeyer.

We do not go so far as to state that in all cases notice to an attorney is notice to the creditor, we merely state that under the conditions in the instant case, notice-

to Otto Linsenmeyer of the bankruptcy was notice to Ernest Linsenmeyer. As was stated in the Katz v. Kowalsky case, op. cit.:

"The purpose of the notice or knowledge requirements of the bankruptcy laws are to provide a creditor 'an equal opportunity with other creditors' to participate in the administration of the affairs of the estate and obtain any dividends to which he is entitled. (Citations omitted.) Notice or actual knowledge which comes to someone who has clear authority to act for the creditor and which provides ample opportunity to participate in the bankruptcy proceedings satisfies the requirement of the law." 295 N.W. 600 at 604.

The judgment is affirmed.

STEVENS, C. J., and DONOFRIO, J., concur.